JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-10360 JVS (SKx) | Date | February 18, 2022 |
| Title | AMCO Insurance Co. v. Cameron Kiefer et al. | | |

| | |
|---|---|
| Present: The Honorable | **James V. Selna, U.S. District Court Judge** |

| | |
|---|---|
| Lisa Bredahl | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**     **[IN CHAMBERS] Order Regarding Motion for Summary Judgment**

    Plaintiff AMCO Insurance Company ("AMCO") filed a motion for summary judgment.  Dkt. No. 40; see Mot., Dkt. No. 40-1.  Defendants Deron Kiefer ("Kiefer") and Cynthia McGruder ("McGruder") (collectively, "Defendants") opposed the motion. Opp'n, Dkt. No. 49.  AMCO responded.  Reply, Dkt. No. 54.

    After the Court posted its tentative order, Defendants filed a request for hearing.  Dkt. No. 55.  The Court considered the arguments raised by the Defendants and finds that oral argument would not be helpful in this matter.  Fed. R. Civ. P. 78; L.R. 7-15.

    For the following reasons, the Court **GRANTS** the motion for summary judgment in full.  As a matter of law, the bodily injury liability limits in the Policy are $25,000 per person and $50,000 per accident.  The Court directs AMCO to file a proposed judgment within seven days of entry of this order.

**I. BACKGROUND**

    This case concerns a dispute over the terms of an insurance policy.  AMCO issued Personal Auto Policy No. PPA 0070833653-1 ("Policy") to named insureds McGruder and Kiefer, which was in effect from December 15, 2017 to December 15, 2019.[1]  See

---

[1] The parties occasionally refer to "Cynthia Kiefer" as opposed to "Cynthia McGruder." As the parties do not dispute that this is the same individual, the Court will refer to "McGruder" throughout for ease of understanding.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-10360 JVS (SKx) | Date | February 18, 2022 |
| Title | AMCO Insurance Co. v. Cameron Kiefer et al. | | |

Statement of Uncontroverted Facts ("SUF"), Dkt. No. 50, ¶ 11; 2018–2019 Policy, McClain Decl., Ex. A, Dkt. No. 40-11; 2017–2018 Policy, McClain Decl., Ex. B, Dkt. No. 40-12.  Kiefer is a licensed insurance agent and broker with over 34 years of experience.  SUF ¶ 3.  Since 2005, he has been the owner, president, and CEO of Gold Mountain Insurance.  Id. ¶ 4.  Since at least 2017, Gold Mountain had written agency appointment agreements granting it the authority to transact business on behalf of several insurance companies, including AMCO.  Id. ¶¶ 5–6.

On December 15, 2017, Gold Mountain submitted an application through AMCO's web-based interface, "AgentCenter," requesting coverage for the Defendants.  Id. ¶ 13.  After Kiefer input information about the vehicles and the requested coverage, AMCO sent a price quote.  Id. ¶¶ 14–15.  AMCO maintains that it sent a more detailed summary of the coverages that Kiefer accepted, which he denies.  Id. ¶ 16.  The Policy issued by AMCO lists "bodily injury" liability limits of $25,000 per person and $50,000 per accident.  Id. ¶ 20; 2017–2018 Policy at 4; 2018–2019 Policy at 3.  However, Kiefer maintains that he "requested, ordered, and applied for" liability limits of $250,000 per person and $500,000 per accident.  Id. ¶ 21; Kiefer Decl., ¶¶ 14, 11, 22.  AMCO asserts that it mailed a policy to Kiefer, SUF ¶ 24, but Kiefer denies ever receiving the Policy or any Declarations pages in the mail prior to the accident.  Id. ¶ 36.  On December 15, 2018, Kiefer renewed the Policy.  Id.  The parties similarly disagree about the limits on the renewed Policy.  Id.

The parties agree that Gold Mountain's files do not contain a hard copy of an application, the Policy, or a Declarations page.  SUF ¶ 18. The parties also agree that Gold Mountain's files do not contain any documentation confirming the requested bodily injury liability limits.  Id. ¶ 19.  Kiefer, through Gold Mountain, used AgentCenter to make multiple changes to the vehicles and coverage on the Policy unrelated to the liability limits at issue.  Id. ¶¶ 27, 28, 30.  AMCO asserts that it immediately mailed a hard copy of the Policy reflecting each change to the Defendants, id. ¶ 33, while Defendants deny ever receiving any mailed documentation of coverage.  Id. ¶ 36.  The parties agree that neither Gold Mountain nor the Defendants took any action to confirm the "bodily injury" liability limits for the Policy beyond completing the online application.  Id. ¶ 37.  Kiefer submitted a declaration that he believed that the policies bodily injury liability limits were $250,000 per person and $500,000 per accident at all times the Policy was valid until AMCO informed them otherwise in April or May of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-10360 JVS (SKx) | Date | February 18, 2022 |
|---|---|---|---|
| Title | AMCO Insurance Co. v. Cameron Kiefer et al. | | |

2019.  Kiefer Decl. ¶¶ 22–24; see also McGruder Decl., Dkt. No. 53.

On February 8, 2019, Cameron Kiefer, the Defendants' son, was involved in an automobile accident in which he was allegedly driving.  SUF ¶ 1. Subsequently, a complaint was brought in Ventura Superior County Superior Court ("the Solis Complaint"), naming the Defendants and alleging that they were legally liable for injuries resulting from the accident.  Id.  The Kiefers tendered defense of the Solis Complaint to AMCO, and AMCO is defending them subject to a reservation of rights.  Id. ¶ 2.  After the accident, the parties disputed the amount of the coverage provided by the Policy. AMCO brought this action seeking a declaratory judgment that the liability limits of the Policy for bodily injury coverage are $25,000 per person and $50,000 per accident.  See Compl., Dkt. No. 1.

## II. Legal Standard

Summary judgment is appropriate where the record, read in the light most favorable to the nonmovant, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Summary adjudication, or partial summary judgment "upon all or any part of [a] claim," is appropriate where there is no genuine dispute as to any material fact regarding that portion of the claim.  Fed. R. Civ. P. 56(a); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks omitted).

Material facts are those necessary to the proof or defense of a claim, and are determined by referring to substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.[2]

---

[2] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-10360 JVS (SKx) | Date | February 18, 2022 |
| Title | AMCO Insurance Co. v. Cameron Kiefer et al. | | |

The moving party has the initial burden of establishing the absence of a material fact for trial. Anderson, 477 U.S. at 256. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). Furthermore, "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Therefore, if the nonmovant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion.

The Court has only relied on admissible evidence in the determination of the outcome of this motion. When the order cites evidence to which the parties have objected, the objection is impliedly overruled. Additionally, the Court declines to rule on objections to evidence upon which it did not rely.

### III. DISCUSSION

The plain language of the Policy states that the liability limits for "bodily injury" are $25,000 per person and $50,000 per accident. See 2017–2018 Policy at 4; 2018–2019 Policy at 3. Under California law, "[w]hen a court is reviewing claims under an insurance policy, it must hold the insured bound by clear and conspicuous provisions in the policy even if evidence suggests that the insured did not read or understand them." Sarchett v. Blue Shield of California, 43 Cal. 3d 1, 14–15 (1987). The insurer does have the burden of making coverage limitations "conspicuous, plain and clear." Haynes v. Farmers Ins. Exchange, 32 Cal. 4th 1198, 1204 (2004). Thus, policyholders may be charged with constructive knowledge of clear and conspicuous provisions of an insurance policy, even if the policy holder has not read the policy. See Hadland v. NN Investors Life Ins. Co., 24 Cal App. 4th 1578, 1586 (1994); Malcolm v. Farmers New World Life Ins. Co., 4 Cal. App. 4th 296, 304 n.6 (1992).

Here, the coverage limits at issue are clearly displayed in a conspicuous and understandable manner on the Declarations page, under the header "Insured Vehicles and Schedule of Coverages," and in proximity to descriptions of the other components of the

---

opposition to the motion." L.R. 56-3.

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-10360 JVS (SKx) | Date | February 18, 2022 |
| Title | AMCO Insurance Co. v. Cameron Kiefer et al. | | |

coverage. This easily qualifies as conspicuous, plain, and clear to the layperson. Thus, the Defendants may be charged with constructive knowledge of the liability limits as written in the Policy. Nevertheless, the Defendants present several arguments that they suggest support their contention that the liability limits are higher.

    *A.    Agents of AMCO*

First, Defendants argue that because Gold Mountain was an Appointed Agent of AMCO, it had the authority to bind AMCO, including at the time that the Policy was entered into.³ Opp'n at 5–6. Thus, the Defendants seek to impute Gold Mountain's knowledge of the alleged request for higher liability limits to AMCO and hold AMCO responsible for any errors made by Gold Mountain when it submitted that request. Opp'n at 7. While Gold Mountain was an Appointed Agent of AMCO at the time, that does not have as sweeping an impact as Defendants contend.

California law distinguishes between agents, who act on behalf of the insurer, and brokers, who act on behalf of the insured. Kruppe v. Mercury Ins. Co., 123 Cal. App. 4th 924, 930 (2004). However, "there is no absolute dichotomy" between the two roles. Id. To act as an insurance agent, an individual must have a valid license, Cal. Ins. Code § 1631, and be authorized to transact business on the insurer's behalf, as evidenced by a notice of agency appointment filed with the California Department of Insurance. Cal Ins. Code. § 1704(a). It is well established law that when "an insurance agent is the agent for several companies, and either selects the company with which to place the insurance or picks an insurer at the insured's direction, the insurance agent is the agent of the insured, not the insurer." Mercury Ins. Co. v. Pearson, 169 Cal. App. 4th 1064, 1073 (2008); see Eddy v. Sharp, 199 Cal. App. 3d 858, 865 (1988); Bonaparte v. Allstate Ins. Co., 49 F.3d 486, 488–89 (9th Cir. 1994).

The agency appointment agreement between AMCO and Gold Mountain grants Gold Mountain the authority to "solicit applications for personal lines insurance and

---

³ The parties do not dispute that Kiefer was acting on behalf of Gold Mountain when he submitted an application for the Policy. Thus, the Court refers to Gold Mountain as the Appointed Agent and entity that submitted the request to AMCO to distinguish from the action taken by the Defendants, who requested that Gold Mountain procure coverage on their behalf.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-10360 JVS (SKx) | Date | February 18, 2022 |
| Title | AMCO Insurance Co. v. Cameron Kiefer et al. | | |

bonds, deliver and countersign policies and endorsement thereon, deliver bonds, collect premiums for transmission to [AMCO], and to bind [AMCO] temporarily to permit transmission of applications for insurance and endorsements to company for approval and processing or disapproval." See Independent Agency Agreement, Dkt. No. 52-3, at 2. Notably, this only grants Gold Mountain the authority to temporarily bind AMCO while it processes an application and determines whether to issue a policy. Id. The agency appointment agreement also makes clear that Gold Mountain is "an independent contractor for all purposes" and "is free to exercise its own judgment as to persons from whom to solicit insurance or bonds as well as the manner, time, and place of solicitation." Id.

Here, it is undisputed that Gold Mountain had agency appointment agreements with multiple insurers, and could have chosen to place the policy with another insurer. See SUF ¶¶ 5, 10; Dkt. Nos. 52-2, 52-3. This is consistent with Gold Mountain acting as a broker on behalf of the insured, the Defendants. The Court holds as a matter of law that an agency relationship did not exist between AMCO and Gold Mountain or Kiefer for the purposes of submitting the application for the Policy. See Troost v. Estate of DeBoer, 155 Cal. App. 3d 289, 299 (1984) (holding that the determination of agency relationship is question of law where essential facts are undisputed); Isenberg v. California Employment Stabilization Comm'n, 30 Cal. 2d 34, 41 (1947) ("[I]f the essential facts are not in conflict the question of the legal relations arising therefrom is a question of law.").

Because Gold Mountain was not acting as an agent of AMCO when submitting the application for the Policy, any error or omission by Gold Mountain may not be imputed to AMCO. Thus, the Court rejects Defendants' arguments that Gold Mountain's knowledge should be imputed to AMCO, or that AMCO is liable for any errors committed by Gold Mountain while procuring a Policy on behalf of the Defendants.

      B.    *Triable Issue of Fact as to Requested Limits*

Next, Defendants argue that there is a triable issue of fact as to whether the Defendants requested the higher limits when applying for the Policy. Opp'n at 9–11. They assert that there is nothing in writing to dispute their belief that the liability limits were $250,000 per individual and $500,000 per accident at all times. Opp'n at 9. They also contend that because their other policies had those higher limits, that suggests that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-10360 JVS (SKx) | Date | February 18, 2022 |
| Title | AMCO Insurance Co. v. Cameron Kiefer et al. | | |

they would have requested higher limits for this Policy. Opp'n at 10–11. AMCO disputes the contention that there are any disputes of material fact. Reply at 10–12.

      The Court agrees with AMCO. Even if all of the facts asserted by the Defendants are true, they are not material to the determination of the terms of the Policy. Just because the Defendants may have intended to purchase a policy with higher limits, consistent with their prior coverage from other insurers, that does not bind AMCO. As discussed above, if Gold Mountain made an error when transmitting the request, that error may not be imputed to AMCO. The Defendants' personal beliefs as to the terms of the Policy do not change the terms of the written Policy. Because the bodily injury liability limits were clear and conspicuous, the Defendants may be charged with constructive knowledge of the Policy terms, even if they never read the Policy and honestly believed that the limits were higher.

      Thus, the Court holds that there are not any material disputes of fact as to the terms of the Policy.

      C.    *Reformation*

      Finally, Defendants suggest that the Court should use its equitable powers and reform the policy to reflect the higher liability limits. Opp'n at 11–12. Under California law, a contract may be reformed either for "a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected." Cal. Civil Code § 3399. Defendants are unable to show a mutual mistake of the parties because there is no reason to suspect that AMCO intended to issue a Policy with higher limits as all of their documents are to the contrary. As discussed above, if the mistake was made by Gold Mountain, that cannot be imputed to AMCO because  was not acting as its agent for these purposes. Alternatively, Defendants could argue that the unilateral mistake was made by Gold Mountain acting on their behalf. However, there is no reason to suspect that AMCO knew or should have known that Gold Mountain may have made a mistake, particularly when they repeatedly issued revised updated versions of the Policy that consistently reflected the lower limits. The facts in the record do not support the Defendants' reformation argument. See Bonaparte, 49 F.3d at 488–89 (upholding summary judgment for insurer on reformation theory where there was no factual basis for a claim of mutual mistake or unilateral mistake that was known or suspected by the

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-10360 JVS (SKx) | Date | February 18, 2022 |
| Title | AMCO Insurance Co. v. Cameron Kiefer et al. | | |

insurer).

Thus, the Court holds that reformation would not be appropriate here.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** AMCO's motion for summary judgment in full.[4]  As a matter of law, the bodily injury liability limits in the Policy are $25,000 per person and $50,000 per accident.  The Court directs AMCO to file a proposed judgment within seven days of entry of this order.

|  |  : | 0 |
|---|---|---|
|  | Initials of Preparer | lmb |

---

[4] The Court also notes that the Defendants appear to request that the Court grant summary judgment sua sponte in their favor.  See Opp'n at 7.  The undisputed material facts support the opposite conclusion.  Thus, the request is denied.